IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Werner Mansouri, | ) | Civil Action No.  8:14-cv-02251-JMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this
action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final
decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's
claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is
recommended that the decision of the Commissioner be reversed and remanded for
administrative action consistent with this recommendation, pursuant to sentence four of 42
U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On February 7, 2013, Plaintiff protectively filed an application SSI alleging an onset
of disability date of March 1, 2001.  [R. 127–33.]  The claim for SSI benefits was denied

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 81–89.] Plaintiff requested a hearing before an ALJ, and on February 6, 2014, ALJ Edward T. Morriss conducted a de novo hearing on Plaintiff's claims. [R.33–56.] Plaintiff declined representation a this hearing and proceeded pro se. [R. 36.]

The ALJ issued a decision on March 19, 2014, finding Plaintiff not disabled under § 1614(a)(3)(A) of the Social Security Act ("the Act"). [R. 20–28.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since February 7, 2013, the application date. [R. 22, Finding 1.] At Step 2, the ALJ found Plaintiff had a severe impairment of degenerative disc disease. [R. 22, Finding 2.] The ALJ also noted Plaintiff suffered from depression but that it no more than minimally affected his ability to work and resulted in no limitations in his activities of daily living; no limitations in his social functioning; mild limitations in his concentration, persistence, and pace; and no episodes of decompensation. [R. 22–23.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 24, Finding 3.] The ALJ specifically considered Listing 1.04, Disorders of the Spine. [R. 24.] Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

medium work[4] as defined in 20 CFR 416.967(c) and is limited to occasional climbing of ladders, ropes and scaffolds with frequent but no continuous climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

[R. 24–25, Finding 4 (footnote in original).] Based on his RFC, the ALJ determined Plaintiff was capable of performing his past relevant work as a sales person. [R. 28, Finding 5.] Accordingly, the ALJ found Plaintiff had not been under a disability as defined by the Act since February 7, 2013, the date the application was flied. [R. 28, Finding 6.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review. [R. 1–5.] Plaintiff, proceeding pro se, filed this action for judicial review on June 10, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the final administrative determination of the Commissioner should be reversed and Plaintiff should be awarded SSI because the ALJ failed to consider the MRI and photos of his back performed by Dr. Dilip Malhotra at the International Hospital of Bahrain. [Doc. 24.] Plaintiff alleges that those hired by SSI are fully biased in favor of SSI and are downplaying the true severity of his back pain. [*Id.*]

The Commissioner contends the final decision is supported by substantial evidence and argues that, while the ALJ did not specifically mention the MRI, this is not a compelling argument for remand because MRIs provide no insight into a plaintiff's functional limitations and the MRI report categorized Plaintiff's condition as "mild" and did not show anything requiring surgery at the time. [Doc. 25 at 10.] Further, the Appeals Council considered the

---

[4]Medium exertional work involves lifting and carrying 25 pounds occasionally and 50 pounds frequently as well as an ability to sit, stand, and walk for 6 hours in an 8-hour workday.

3

MRI and concluded it did not provide a basis for changing the ALJ's decision.  [*Id.* at 10–11.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

4

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning"

6

because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

7

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit,

whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").

---

[6] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7] Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a).

11

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . .

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

12

. and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

17

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Consideration of Medical Evidence

Plaintiff challenges the ALJ's findings based on the ALJ's failure to expressly consider MRI photos of Plaintiff's back performed by Dr. Dilip Malhotra in Bahrain. [Doc. 24.]  According to the medical evidence, Plaintiff underwent an MRI ("2012 MRI") of the lumbar spine on April 3, 2012.  [R. 297.]  Dr. Mithun Bhandary ("Dr. Bhandary"), the radiologist who read the 2012 MRI findings, noted broad based right lateral protrusion at L3-4 mildly abutting right L3 nerve root; left sided concentric annular tear and right sided broad based foraminal protrusion at L4-5 mildly indenting thecal sac and narrowing right neural foramen; and broad based right sided foraminal protrusion at L2-3 mildly indenting thecal sac and narrowing right neural foramen. [*Id.*]

A subsequent diagnostic imaging of the lumbar spine performed on April 4, 2013 and signed by Dr. Scott Crane ("Dr. Crane") showed disc narrowing spurring at L3-4, but no fractures or dislocations.  [R. 303.]  Dr. Crane assessed mild degenerative changes of the lumbar spine. [*Id.*]

On April 11, 2013, Plaintiff underwent a Comprehensive Whole Body Examination by Dr. Cindy Wright, D.O. ("Dr. Wright") at the request of the disability examiner. [R. 305–06.]  Dr. Wright noted that Plaintiff was able to do all activities of daily living ("ADL's") and walked half of a mile most days, read, lay around, visited friends, talked to friends, went to the beach to walk, tried to stay fit, and went out to eat.  [R. 305.]  Dr. Wright also

noted that Plaintiff got onto and off of the examination table without assistance. [R. 306.] On musculoskeletal exam, Dr. Wright noted that Plaintiff's straight leg raises, both sitting and supine, were normal; lumbar range of motion was normal; gait and ambulation were normal with a fast pace; and he was able to do a tandem walk, toe walk, and heel walk. [*Id.*] On neurological exam, Dr. Wright noted Plaintiff was awake, alert, and oriented; muscle strength was 5/5 in both the upper and lower extremities; DTR's were 1+ in the upper extremities and 2+ in the lower extremities; there was no muscle atrophy; and sensation to light touch was intact. [*Id.*] Dr. Wright diagnosed Plaintiff with low back pain not currently taking medications. [*Id.*] She also indicated that she had no records to review and that x-rays from Grand Strand Regional Medical Center may add additional information. [*Id.*]

A mental status exam was conducted on Plaintiff by Dr. Douglas R. Ritz ("Dr. Ritz") on October 3, 2013. [R. 307.] Plaintiff was diagnosed with major depressive disorder, single episode, mild. [R. 309.] Dr. Ritz found Plaintiff was able to function at least in an unskilled type work setting, was able to maintain his concentration during the assessment without difficulty, did all of his household chores, had minimal social contacts but was not socially isolated; and was able to handle funds. [*Id.*] Dr. Ritz noted, however, that Plaintiff could benefit from an assessment as to the efficacy of antidepressant medication. [*Id.*]

### ALJ's Consideration of Medical Evidence

In evaluating the evidence of record, the ALJ explained as follows:

> The claimant alleges disabling low back pain but the record does not reveal any treatment for this or any other impairment during the period at issue. A radiographic study of the lumbar spine performed on April 4, 2013 showed mild degenerative changes and disc space narrowing at the L3-4 level. (Exhibit

19

3F) Dr. Cindy Wright performed a thorough consultative medical examination on April 11, 2013, diagnosing only chronic low back pain not currently taking any medications, with no functional limitations noted. The claimant reported that he able to do all his activities of daily living and he does and he does not use any assistive device.  He was able to get on and off the examination table without assistance. Musculoskeletal findings showed the lumbar range of motion was normal and straight leg raise testing was negative.  The claimant was able to do a tandem walk, toe walk and heel walk.  His gait and ambulation were normal with a fast pace.  The extremities had only mild clubbing with no cyanosis or edema.  The pulses were normal at 4+.   Neurological findings showed normal 5/5 muscle strength in both upper and lower extremities.  The deep tendon reflexes were 1 + in the upper extremities and 2+ in the lower extremities, there was no muscle atrophy, and sensation was intact to light touch. (Exhibit 4F)

***

As for the opinion evidence, pursuant to 20 CFR 416.927 and Social Security Ruling 06-3p, 962p,and 96-6p, I have considered the medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations, of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants. The record does not contain any information from any treating source as to the claimant's residual functional capacity.  The conclusion of the consultative evaluator, Dr. Ritz regarding the claimant's mental functioning (Exhibit 5F)[9], is given considerable weight, as it is strongly supported and consistent with the medical evidence as a whole. Disability Determination Service (DDS) medical consultants also reviewed the medical evidence of record pertaining to the claimant's functional limitations.  The State Agency medical consultants found that the claimant was limited to a range of medium work activity and that his mental impairments were non-severe.  (Exhibit 4A) Although these

_____

[9]Dr. Ritz concluded that the claimant could benefit from an assessment as to efficacy of antidepressant medication; however, he did have the capacity to avoid physical danger. He stated that the claimant would be able to function at least in an unskilled type work setting and was able to maintain his concentration during this assessment without difficulty. (Exhibit 5F)

> physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, these opinions are accorded some weight, as they are supported by the objective medical evidence of record.

[R. 25–27 (footnote in original).]

### *Discussion*

The Fourth Circuit Court of Appeals has clearly established that a pro se claimant is "entitled to the sympathetic assistance of the ALJ to develop the record, to assume a more active role and to adhere to a heightened duty of care and responsibility." *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980) (internal quotation marks and citation omitted). Thus, the ALJ has a duty to ensure a claimant receives a full and fair hearing of his claims. *Sims v. Harris*, 631 F.2d 26, 27 (4th Cir. 1980). The heightened duty of care in pro se cases relates to the development of the issues and facts in the record, and does not impact the weight to be given to the evidence in the record. *See Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995) (unpublished table decision) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." (citing *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir.1994))). Whether he is represented or not, the plaintiff bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability. See 20 C.F.R. § 416.912(a) & (c); 42 U.S.C. § 423(d)(5)(A).

During the hearing, the ALJ obviously found an issue with the amount of evidence in the case indicating that there was "very little evidence in the file" other than evidence from Health Care Partners of South Carolina and Grand Strand Regional Medical Center. [R. 46.] The ALJ also explained that Plaintiff was sent to Dr. Wright for a consultative

examination which is often done when there is not enough medical evidence in the file due to, for example, a person's inability to afford treatment. [R. 48.]

While the ALJ attempted to meet his duty to develop the issues and facts in the record, the Court is unable to follow the ALJ's reasoning for fully discounting the 2012 MRI findings from April 2012.  In assessing Plaintiff's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements.  SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,477 (July 2, 1996).  The Court finds the ALJ failed to consider all relevant evidence in the record, specifically the 2012 MRI findings read by Dr. Bhandary finding "broad based right lateral protrusion at L3-4 mildly abutting right L3 nerve root; left sided concentric annular tear and right sided broad based foraminal protrusion at L4-5 mildly indenting thecal sac and narrowing right neural foramen; and broad based right sided foraminal protrusion at L2-3 mildly indenting thecal sac and narrowing right neural foramen." [R. 297.] The ALJ's failure to even consider these laboratory findings forecloses the Court's ability to understand either the ALJ's reasoning or the ALJ's resolution of conflicts in the evidence. *See McElveen v. Colvin*, C/A No. 8:12-1340-TLW-JDA, 2013 WL 4522899, at *11 (D.S.C. Aug. 26, 2013) ("[W]ithout a discussion of the conflicting evidence, it is difficult for a reviewing court to (1) track the ALJ's reasoning and be assured that all record evidence was considered and (2) understand how the ALJ resolved conflicts in the evidence.").  To the contrary, it appears the ALJ relied on the findings of Dr. Wright to support his RFC findings; however, it is not clear Dr. Wright had access to the 2012 MRI findings in making her assessment regarding Plaintiff's impairment.  [R. 306.]  Further, the Court notes that evidence of record appears to contradict the 2012 MRI findings in that the findings from the

22

2013 imaging do not appear to be as severe as the 2012 MRI findings  [R. 303 (diagnostic imaging of the lumbar spine showing narrowing spurring at L3-4 but no fractures or dislocations)]; however, the ALJ failed to explain his consideration of this evidence in light of the 2012 MRI findings.

And while the Plaintiff's MRI findings may not present functional limitations for the ALJ's consideration, the MRI findings are certainly pertinent to the ALJ's Listing analysis. Specifically, Listing 1.04 is directed to disorders of the spine resulting in compromise of a nerve root or the spinal cord with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, §1.04.  The 2012 MRI findings suggest at least a potential compromise of the nerve root at L3.

Plaintiff's testimony also suggests the distribution of pain and limitations in motion. Plaintiff testified to "electrical pains in [his] legs, in [his] back" which produces inflamation which makes it worse.  [R. 41.]  Plaintiff alleges he is in pain all day and all night, he is not allowed to lift, he cannot sit or stand for too long; and he has pain in his back, legs, nerves, and sometimes his hands.  [R. 168.]  Plaintiff also alleges he has to sit and cannot bend, it is hard to bend, and he is in pain with whatever he does bend.  [R. 171.]  Further, Plaintiff alleges his pain affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and get along with others. [R. 175.] Plaintiff also alleges he stopped taking medication because it was too expensive and it did not work.  [R. 177.]  With respect to his ADL's, Plaintiff claims he does laundry once a month

23

for one hour; cleans every six months for two hours; shops every ten days for one hour; and reads, watches TV, uses the computer, and walks. [R. 172–74.] Rather than address Plaintiff's allegations, the ALJ discounts Plaintiff's testimony of allegedly disabling symptoms, giving his testimony little weight, based on his conclusion that there are no clinical findings supporting his claims. [R. 26.] The Court notes that the clinical findings from the 2012 MRI, however, could support some of Plaintiff's allegations if the ALJ finds the 2012 MRI findings to be reliable evidence.

Lastly, the Court notes that the ALJ does not appear to have considered Plaintiff's depression in combination with his back impairment in formulating his RFC. While the ALJ gives Dr. Ritz mental RFC considerable weight, Dr. Ritz indicated that Plaintiff could benefit from an assessment as to the efficacy of antidepressant medication. [R. 27.] There is no indication the ALJ considered this statement by Dr. Ritz and/or considered the necessity of an additional assessment. In any instance, Plaintiff alleges numerous impairments due to pain, including his ability to remember, concentrate, and get along with others. [R. 175.] At a minimum, these allegations should be considered in assessing Plaintiff's RFC and his ability to perform his past relevant work as a sales person or any other type of work in the national economy.[10]

---

[10]Further, Respondent's argument that the ALJ's opinion should be affirmed because the Appeals Council considered the 2012 MRI and chose not to remand the proceeding [Doc. 25 at 10–11] is without merit. *See Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) ("We found fault with the ALJ's decision—not the Appeals Council's denial of review—finding that the ALJ's failure to make requisite findings or to articulate the bases for his conclusions makes our task impossible." (quotation marks and citation omitted)).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action consistent with this recommendation. *See Shalala v. Schaefer*, 113 S.Ct. 2625 (1993).

**IT IS SO RECOMMENDED**

S/Jacquelyn D. Austin
United States Magistrate Judge

July 31, 2015
Greenville, South Carolina